O

# United States District Court
# Central District of California

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>TENNYSON ELECTRIC, INC.,<br><br>  Defendant. | Case No. 2:16-cv-04908-ODW (GJSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [14]** |

## I. INTRODUCTION

Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company brings this action against Defendant Tennyson Electric, Inc. under the Employee Retirement Income Security Act ("ERISA") for the payment of delinquent contributions. Defendant has failed to respond to the Complaint, and Plaintiff now moves for entry of default judgment against Defendant. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. (ECF No. 14.)[1]

///

---

[1] After considering the moving papers, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Plaintiff is the administrator of a multi-employer pension plan within the meaning of ERISA. (Compl. ¶ 3, ECF No. 1.) Defendant is an employer that entered into a collective bargaining agreement ("CBA") with the Southern California District Council of Laborers ("Union"). (*Id.* ¶¶ 5, 6.) Under that agreement, Defendant was required to make contributions to the pension plan. (*Id.* ¶ 8.) Plaintiff audited Defendant's records for the period of January 2011 through June 2015, which revealed that Defendant had failed to pay $13,935.12 in contributions. (*Id.* ¶ 15.) Plaintiff sent Defendant the results of the audit along with a demand for payment of the following sums:

| | |
|---|---|
| Delinquent Contributions | $13,935.12 |
| Interest | $2,935.97 |
| Liquidated Damages | $2,782.38 |
| Audit Costs | $1,920.00 |
| **Total** | **$21,573.47** |

(*Id.* ¶¶ 16–17.) Defendant failed to respond. (*Id.* ¶ 18.) Four months later, Plaintiff resent the audit results and demand for payment, but Defendant again failed to respond. (*Id.*)

On July 5, 2016, Plaintiff filed this action against Defendant, asserting a single claim for violation of 29 U.S.C. § 1145. (ECF No. 1.) On July 28, 2016, Plaintiff completed service of process on Defendant. (ECF No. 7.) On August 25, 2016, after Defendant failed to respond to the Complaint, the Clerk entered a default against Defendant. (ECF Nos. 9–10.) Plaintiff then applied to the Clerk to enter a default judgment, which the Clerk declined to adjudicate. (ECF Nos. 12–13.) Shortly thereafter, Plaintiff moved this Court to enter a default judgment against Defendant. (ECF No. 14.) That Motion is now before the Court for consideration.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2. Local Rule 55-1 requires the movant to submit a declaration establishing: (1) when and against what party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the notice has been served on the defaulting party, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1. Finally, if the plaintiff seeks unliquidated damages, Local Rule 55-2 requires the plaintiff to give notice to the defaulting party of the amount sought. C.D. Cal. L.R. 55-2; *Unliquidated Damages*, Black's Law Dictionary (10th ed. 2014) (defining "unliquidated damages" as "[d]amages that cannot be determined by a fixed formula").

If these procedural requirements are satisfied, a district court has discretion whether to enter a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the defendant's liability generally is conclusively established, and the court accepts the well-pleaded factual allegations in the complaint as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

## IV. DISCUSSION

### A. Procedural Requirements

Plaintiff has complied with the relevant procedural requirements for the entry of a default judgment. Plaintiff's counsel submits a declaration attesting that: (1) the Clerk entered a default against Defendant on August 26, 2016; (2) Defendant is not an infant or incompetent person; (3) Defendant is not covered under the Servicemembers Civil Relief Act; and (4) Plaintiff served Defendant with this Motion and all supporting documents. (Sackman Decl. ¶¶ 3–5, ECF No. 14-1.) Plaintiff has therefore complied with Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rules 55-1 and 55-2.

### B. The *Eitel* Factors

The Court concludes that the *Eitel* factors weigh in favor of entering a default judgment. The Court will discuss each factor in turn.

<u>Prejudice</u>. The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo*, 238 F. Supp. 2d at 1177. Because Defendant has failed to appear in the action, Plaintiff will be unable to recover the delinquent contributions Defendant owes unless the Court enters a default judgment against Defendant. Therefore, this factor favors entry of a default judgment.

<u>Sufficiently Pleaded and Meritorious Claims</u>. The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'" *Id.* at 1175 (citations omitted); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Plaintiff asserts a single claim for delinquent contributions under ERISA. Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If the employer fails to do so, the plan or a plan fiduciary may bring an action to recover the unpaid contributions. *Id.* § 1132(d)(1);

*Bd. of Trustees of Bay Area Roofers Health & Welfare Trust Fund v. Westech Roofing*, 42 F. Supp. 3d 1220, 1224 (N.D. Cal. 2014). Here, Plaintiff alleges that Defendant was obligated to make contributions under the terms of a collective bargaining agreement that it entered into with the Union. (Compl. ¶¶ 5–6.) Plaintiff conducted an audit of Defendant's records and determined that Defendant failed to pay $13,935.12 in contributions. (*Id.* ¶¶ 15–16.) Assuming, as the Court must, that these allegations are true, Plaintiff has stated a meritorious claim to recover delinquent contributions under ERISA.

<u>Amount at Stake</u>. The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1175. Here, the total amount Plaintiff seeks to recover is $22,187.38,[2] inclusive of statutory costs (but excluding attorneys' fees), which Defendant failed to pay as required under the collective bargaining agreement. (Sackman Decl. ¶ 7; *see also* Compl. ¶ 16.) Defendant repeatedly ignored Plaintiff's demands to pay this amount. (Compl. ¶ 18.) Given Defendant's conduct and the relatively small sum at stake, this factor favors entry of judgment.

<u>Dispute as to Material Facts</u>. The next *Eitel* factor considers the possibility that material facts are in dispute. *Eitel*, 782 F.2d at 1471–72. Here, there is a possibility that Plaintiff's audit miscalculated the contributions Defendant made or owed. However, Defendant's unwillingness to acknowledge or respond to Plaintiff's demands suggests that Defendant does not dispute their calculations. Moreover, because Defendant failed to appear in this action, Plaintiff's allegation that Defendant underpaid contributions is presumed to be true. Thus, the Court finds that this factor does not preclude entry of judgment.

<u>Default Due to Excusable Neglect</u>. The seventh *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *Id.* The possibility

---

[2] This includes an additional $613.91 in interest, which Plaintiff contends has accrued since the original demand for payment was sent to Defendant. (*See infra* Section IV.C.2.)

of excusable neglect here is remote. Plaintiff personally delivered the Complaint to a manager at Defendant's office, and mailed a copy to Defendant's Chief Executive Officer. (ECF No. 7.) Plaintiff also sent Defendant a copy of this Motion. In light of this, it seems apparent that Defendant is simply ignoring this lawsuit. Accordingly, this factor weighs in favor of entering judgment.

<u>Policy of Deciding Cases on the Merits</u>. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment. The Court thus concludes that the *Eitel* factors favor the Court entering a default judgment against Defendant.

**C.      Amount of Judgment**

In an action to recover delinquent contributions, the Court must award the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Plaintiff cannot rely solely on allegations to establish damages, for "even a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002); *see also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1079 (C.D. Cal. 2012) ("[A]llegations of the amount of damages suffered are not necessarily taken as true.").

/ / /

### 1. Unpaid Contributions

Plaintiff asserts that Defendant failed to pay $13,935.12 in contributions between January 1, 2011, and June 20, 2015. (Compl. ¶¶ 15–16; Sackman Decl., Ex. 1.) Plaintiff reached this conclusion after auditing Defendant's records for the relevant timeframe. (*Id.* ¶ 15; Sackman Decl., Ex. 1.) The Court concludes that the audit report sufficiently establishes Plaintiff's entitlement to this amount in unpaid contributions. *See Cent. Cal. IBEW/NECA Pension Trust v. Ozzimo Elec., Inc.*, No. C 13-03800 JSW, 2015 WL 1883906, at *4 (N.D. Cal. Apr. 22, 2015); *Bd. of Trustees of Laborers Health & Welfare Trust Fund for N. California v. C & L Coatings, Inc.*, No. C 12-1368 PJH MEJ, 2012 WL 7748318, at *7 (N.D. Cal. Dec. 18, 2012); *Bd. of Trustees v. KMA Concrete Const. Co.*, No. C-10-05774 JCS, 2011 WL 7446345, at *3 (N.D. Cal. Dec. 20, 2011).

### 2. Interest

Plaintiff also seeks interest in the amount of $3,549.88. (Sackman Decl. ¶ 7B.) The auditor determined that Defendant owed $2,935.97 in interest up to January 31, 2016, and Plaintiff's counsel calculated additional interest in the amount of $613.91 between February 1, 2016, and October 24, 2016, based on an interest rate of 6% per annum. (*Id.*) The Court concludes that the auditor's report sufficiently evidences Plaintiff's entitlement to $2,935.97 in interest. However, the Court declines to award the additional interest calculated by Plaintiff's counsel. Plaintiff does not submit any evidence—such as the CBA—showing that the rate of interest is in fact 6%. Plaintiff's counsel's declaration simply refers to the interest rate alleged in the Complaint, but allegations alone are an insufficient basis on which to calculate damages.[3] Thus, the Court awards Plaintiff only $2,935.97 in interest.

### 3. Liquidated Damages

Plaintiff seeks liquidated damages in the amount of $2,782.38. However,

---

[3] Moreover, the Complaint makes inconsistent allegations as to the interest rate for delinquent contributions. (*Compare* Compl. ¶ 9 (interest rate is 5% per annum), *with id.* Prayer for Relief ¶ B (interest rate is 6% per annum).)

Plaintiff again does not provide any evidence to support this amount. Plaintiff's counsel's declaration relies exclusively on the allegations in the Complaint concerning the calculation of liquidated damages under the CBA.[4] This is insufficient. Thus, the Court declines to award Plaintiff liquidated damages.

### 4. Audit Costs

Plaintiff seeks to recover the cost of the audit, which Plaintiff's counsel declares to be $1,920. The Ninth Circuit has held that audit costs are recoverable under § 1132(g)(2)(E). *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988). The Court therefore awards Plaintiff audit costs in the amount of $1,920.

### 5. Attorneys' Fees and Costs

Finally, Plaintiff requests $7,230 in attorneys' fees. Plaintiff uses the lodestar method to calculate attorneys' fees. Under the Local Rules for this district, attorneys' fees awarded upon entry of default judgment are generally calculated according to a fee schedule. C.D. Cal. L.R. 55-3. However, "[a]n attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court. The Court shall hear the request and render judgment for such fee as the Court may deem reasonable." *Id.*; *see also Aiuppy v. Set Glob. Inc.*, No. CV1307198DDPPJWX, 2015 WL 5838461, at *2 (C.D. Cal. Oct. 5, 2015) (where counsel requests a fee award in excess of that provided in the Local Rules, "the Court [must] determine if the departure from the Local Rules is reasonable"). Only "an unusual case . . . warrants deviation from the attorneys' fees schedule set forth in the Local Rules." *BWP Media USA, Inc. v. P3R, LLC*, No. 2:13-CV-05315 SVW, 2014 WL 3191160, at *5 (C.D. Cal. July 3, 2014).

Here, Plaintiff has not shown that such deviation is warranted. Counsel appears to argue that they are entitled to a lodestar fee calculation because the Clerk declined to adjudicate the initial application for default judgment, thereby forcing them to file

---

[4] Plaintiff's counsel's declaration simply refers to the allegations in the Complaint. (Sackman Decl. ¶ 7C.)

this Motion. (Mot. at 6.) The Court disagrees. Nothing in Local Rule 55-3 contemplates a departure from the fee schedule simply because counsel was required to file a motion before the Court rather than the Clerk. Indeed, the great majority of default judgments are obtained on motion to the Court; thus, lodestar calculations would become the norm rather the exception if the Court adopted Plaintiff's rule. The Court further notes that counsel's Motion contains several deficiencies that have caused their client to recover less than it might otherwise be entitled to.[5] Thus, the Court sees no reason to depart from the fee schedule under Local Rule 55-3. Under that fee schedule, for a judgment that falls between $10,000 and $50,000, exclusive of costs, the Court must award a fee of $1,200 plus 6% of the amount over $10,000. *See* C.D. Cal. L.R. 55-3. Based on the entry of a judgment in the amount of $18,791.09 (exclusive of costs), Plaintiff is entitled to a fee award of $1,727.47 ($1,200 + $527.47).

Plaintiff also seeks to recover costs in the amount of $479.69, which includes the $400 filing fee and $79.69 to serve the Complaint on Defendant. (Sackman Decl. ¶ 18, Ex. 7.) These costs are reasonable and recoverable, C.D. Cal. L.R. 54-3.1, 54-3.2, and thus the Court awards them in full.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion. (ECF No. 14.)

**IT IS SO ORDERED.**

November 8 , 2016

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[5] Ironically (or perhaps not), Plaintiff spares no effort in arguing for and providing evidence in support of a high lodestar fee award. (Mot. at 6–9; Sackman Decl. ¶¶ 8–17, Exs. 2–6.)